UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE No.1: 12-Civ-21952-JAL

FIRST TIME VIDEOS LLC,                          MOTION TO DISMISS COMPLAINT

                    Plaintiff,                          AND QUASH SUBPOENA

v.

JOHN DOE 68.231.208.27

                Defendant.


**MOTION TO DISMISS COMPLAINT AGAINST DEFENDANT JOHN DOE 68.231.208.27 AND**

**QUASH SUBPOENA AGAINST SAME**

      I, John Doe 68.231.208.27, respectfully move the court for dismissal of my case in the above captioned matter and motion to quash the subpoena served on my Internet Service Provider, Cox Communications, Inc.

      I have never committed the acts alleged by the plaintiffs. After I received a letter in the mail from Cox Communications, Inc. advising me that it had been subpoenaed to release my identity and contact information in this matter, I began to research First Time Videos, LLC and similar cases brought by others. My internet research has revealed that in cases associated with First Time Videos, LLC, when the subpoenaed information is turned over to the plaintiffs, the defendants, guilty or innocent, receive demand letters. The reason I am filing this motion is because these letters typically demand from $2,500 to $7,500 and in some cases in excess of $13,000 for settlement to avoid dealing with threatened lawsuits, and the subsequent telephone calls, which have been reported as persistent if not harassing. I respectfully request that I be allowed to make this motion anonymously without revealing my personally identifying information as to do otherwise would defeat the purpose of this motion.

I base this motion on four factors: (1) lack of jurisdiction, (2) the person using a device connected to the internet at any given time is not necessarily the individual, to whom the involved internet Protocol Address

(IP address) is registered, (3) even the Media Access Control (MAC) address will often indicate only the wireless router connected to the internet but cannot be relied upon to determine who accessed the internet at any particular time, and (4) the inability to identify who actually accessed the internet through given IP and MAC addresses introduces an unacceptable degree of uncertainty with regard to the identification of actual wrongdoers.

## 1. Lack of jurisdiction

The plaintiff has not shown that this Court has jurisdiction over John Doe 68.231.208.27. It has not been shown that John Doe 68.231.208.27 resides in or committed copyright infringement in the State of Florida, as alleged in the Plaintiff's Complaint. The Plaintiff claims that the court has personal jurisdiction since "geolocation technology" was used to trace the IP address of John Doe 68.231.208.27 to a point of origin within the State of Florida, but fails to offer any proof of such claim. The Plaintiff then suggests that, if John Doe 68.231.208.27 does not live in Florida, the Court still has personal jurisdiction under the Florida long-arm statute because John Doe 68.231.208.27 downloaded copyrighted content from or uploaded it to Florida residents, yet still fails to offer any proof of such claim. The Plaintiff has provided, in Exhibit A, a list of IP addresses, but in no way has shown that any of those IP addresses have any relation to the State of Florida.

## 2. The person using a device connected to the internet at any given time is not necessarily the individual to whom an implicated Internet Protocol IP address) is registered

There are many circumstances in which the person to whom an Internet Protocol address may be registered is not the only person able to access the internet through that address. These are discussed at length in a Declaration (*Case 2:12-cv-02084-MMB Document 9*). A copy of this Declaration is attached. The fact that the person to whom an IP address is registered may not be the only individual who can access the internet through that address and the implications of this have been recognized previously by the courts. In *Case 2:11-cv-03995*, the Honorable Gary Brown noted that "it is no more likely that the subscriber to an IP address carried out a particular computer function-here the purported illegal

downloading of a single pornographic film-than to say an individual who pays the telephone bill made a specific telephone call" [p. 6]

**3. Even a valid Media Access Control (MAC) address will often indicate only the wireless router connected to the internet and cannot be relied upon to determine who accessed the internet at any particular time.**

The identity of devices connected to the internet through an IP address is often limited to the first in a chain of devices. With the advent of the wireless router, often this will be the only device that can be identified. However, ownership of a wireless router, even a secured one, is not tantamount to being the only possible user of the device. Therefore, even the MAC address logged by the Internet Service Provider is of limited and possibly no value in determining who accessed the internet at a given moment or even what computer or other device was used to do so. This is discussed in more detail in the Declaration referenced in (2) above. This has explicitly been recognized in the courts by Judge Gary R. Brown who wrote in RE: BITTORRENT ADULT FILM COPYRIGHT INFRINGEMENT CASES (*case 2:11-cv-03995-DRH-GRB Document 39*) that:

> unless the wireless router has been appropriately secured (and in some cases even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film . As one court noted:

> In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connected to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address. The router could be a wireless device in which case, computers located within 300 feet of the wireless router signal could access the internet through the router and modem under the same IP address. The wireless router strength could be increased beyond 600 feet if additional devices are added. The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass the security using publicly available software. [p. 7, citations absent in the original]

**4. The inability to identify who actually accessed the internet through implicated IP and MAC addresses introduces an unacceptable degree or uncertainty with regard to the identification or actual wrongdoers.**

If, as may often be the case, it is not possible to identify the device used to access the internet, much less the person operating the device, simply classifying all persons to whom implicated IP addresses are registered as offenders creates a significant possibility, even probability if repeated often enough, that a number of persons who have done no wrong will be served and possibly elect to settle claims out of court as an expedient. For some this may be a simple business decision: it will cost less to settle than to litigate; for others who lack the financial resources to mount an adequate defense, the "choice" is forced upon them. This creates the potential for a coercive and unjust settlement and this has also been recognized by the courts in various jurisdictions. The Honorable Gary R. Brown writing on *Case 2: 11-cv-03995* (document 39) when evaluating the potential for coerced settlements noted that:

> Many courts evaluating similar cases have shared this concern. See, e.g., *Pacific Century Int'l, Ltd v. Does* 1-37—F. Supp. 2d--, 2012 WL 26349, at *3 (N.D. III .Mar. 30, 2012) ("the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies settle"); *Digital Sin*, 2012 WL 263491, at 3* ("This concern and its potential impact on social and economic relationships, could impel a defendant entirely innocent of the alleged conduct to enter into an extortionate settlement") *SBO Pictures*, 2011 WL 6002620, at *3 ("defendants, whether guilty of copyright infringement or not would then have to decide whether to pay money to retain legal assistance that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement'"). [p. 18]

The Honorable Harold A. Baker noted when commenting on VPR Internationale v. DOES 1-1017 (2:11-cv-02068-HAB -DGB # 15), that:

> Orin Kerr, a professor at George Washington University Law School, noted that whether you're guilty or not, "you look like a suspect." [3] Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public

exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case. In its order denying the motion for expedited discovery, the court noted that until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of a perversion of the purpose and intent" of class actions. Order, d/e 9. [p. 3]

Magistrate Judge Harold R. Loyd writing in regard to *Hard Drive Productions* v. Does 1-90, C11-03825 HRL stated:

> Here, plaintiff has failed to allege that its claims against the 90 Doe defendants arise from "a single transaction or a series of closely related transactions." Instead, plaintiff provides a list of all 90 Doe defendants, identified by IP addresses, and the date and time they each appeared in the swarm over a period of 63 days. See Complaint, Exh. A. Plaintiff also alleges that each Doe defendant "entered the same exact BitTorrent swarm and "reproduced and distributed the Video to multiple third parties." Complaint ¶ 29. But, plaintiff's counsel admitted at the hearing **that plaintiff could not truthfully allege that any of the Doe defendants actually transferred pieces of the copyrighted work to or from one another**. [p. 10, emphasis added]

In Case 2:11-cv-03995 which addressed three cases (*Malibu Media, LLC v, John Does 1-26, C7 12-1147 (J..)) (GRB), Malibu Media, LLC v. John Does 1-11, CV 12-1150(LDW) (GRB), and Patrick Collins, Inc. v. John Does 1-9, CV 12-1154 (ADS) (GRB))* U.S. Magistrate Judge, the Honorable Gary Brown in discussing these issues noted that:

> ... These developments cast doubt on plaintiff's assertions that '[t]he ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." See, e.g., Malibu 26, Compl. At ¶9, or that subscribers to the IP addresses listed were actually the individuals who carried out the complained of acts. As one judge observed:
> The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; **Plaintiff's counsel**

**estimated that 30% of the names turned over by ISPS are not those of individuals who actually downloaded or shared copyrighted material.** Counsel stated that the true offender is often "the "teenaged son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks. The risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2" [pps. 7 -8, citations omitted in the original, emphasis original].

Judge Brown also observed that another judge had previously noted [citations omitted in the original]:

the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes... By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, Plaintiff's sought-after discovery has the potential to draw numerous internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed. [ibid, p. 8]

Finally, also writing in case 2:11-cv-03995, Judge Brown described the litigation practices in cases where pre-service discovery is the basis for identifying putative defendants as "abusive" and went on to state:

Our federal court system provides litigants with some of the finest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. in an earlier case, "while the courts favor settlements, filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." Patrick Collins, Inc. v. Does 1-3757,2011 U.S. Dist. LEXIS 128029, at *6-7 (N.D.Cal. Nov. 4, 2011).

It is for these reasons that I ask the Court to dismiss this complaint and quash the subpoena for identifying and contact information served on Cox Communications, Inc. for me, John Doe.

Dated: 08/03/2012                          Respectfully submitted,


                                           /s/ John Doe 68.231.208.27

                                           John Doe 68.231.208.27

                                           *Pro se*

CERTIFICATE OF SERVICE

I, John Doe, hereby certify that on August 03, 2012, I forwarded a true and correct copy of Motion to

Dismiss Complaint Against John Doe and Quash Subpoena Against Same to Joseph Perea, Joseph

Perea, P.A.; 9100 S Dadeland Blvd, Suite 1500, Miami, Florida 33156 by United States first class mail.

*08/03/2012*

/s/ John Doe 68.231.208.27

*John Doe 69.231.208.27*

John Doe 68.231.208.27

*Pro se*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MALIBU MEDIA, LLC,

      Plaintiff,

v.

JOHN DOES 1-14,

      Defendants.

CASE No. 2:12-CV-02084

_____/

## DECLARATION TO REFUTE INFORMATION PROVIDED BY PLAINTIFF'S COUNSEL, CHRISTOPHER FIORE, 14 MAY 2012 HEARING

I, an anonymous John Doe, do hereby declare:

1. I'm over 18 years of age and competent to make this declaration.

2. I have personal knowledge of the facts in this declaration and the information provided by Plaintiff's counsel, Christopher Fiore, on 14 May 12 (Document #6), during the motion hearing for cases 2:12-CV-02078, 2:12-CV-02084, and 2:12-CV-02088 (Malibu Media LLC is the Plaintiff for these cases), in support of Plaintiff's motion for leave to take discovery prior to Rule 26(f) conference.

3. I have also sent six previous declarations (October 2011 – January 2012) for copyright infringement cases for various courts: Eastern District of Virginia (Richmond Division), *3:11-cv-00531-JAG (Patrick Collins v. Does 1-58), 3:11-cv-00469-JAG (K-Beech v. Does 1-85),* District of Arizona, *2:11-cv-01602-GMS (Patrick Collins v. Does 1-54)*, the Northern District of Florida, *4:11-CV-00584 (Digital Sin, Inc., v. Does 1-145),* Northern District of Illinois, *1:11-CV-09064 (Pacific Century International v. Does 1-31)*, and the District of Columbia, *1:12-cv-00048 (AF Holdings, LLC, v. Does 1-1058)*, refuting various Plaintiff

memorandums.  Note: Four of the six declarations were accepted by the courts.

4.  I'm filing this declaration anonymously, as I'm one of the 200,000+ John Doe defendants in the increasing number of copyright infringement cases filed throughout the U.S.[1]  If I were to file this declaration under true name, I feel I would be singled out for vindictive prosecution by my Plaintiff and the network of copyright infringement lawyers that file these types of cases.  The case I was under has been dismissed, but like many other Doe defendants, I'm waiting for the statute of limitation to expire.  The declarations I have previously filed, and information I provide to Doe defendants on my Web site (*http://dietrolldie.com*), have caused copyright infringement lawyers and Plaintiffs more work and the doubtless loss of settlement fees.  To prevent identification, I will be mailing this declaration to the court and Plaintiff from a State other than my own.

5.  Plaintiff will likely claim I have no standing to make this declaration, as I'm not one of the Doe defendants in this case.  I believe I do have standing and valuable information concerning the information Mr. Fiore provided the court at the 14 May 12, hearing.  As the hearing only sought clarification from Mr. Fiore, it is understandable the court would take his responses at face value.  My standing is based on my direct knowledge of these types of cases and the operations of computer networks, to include small home/office networks, most (if not all) are what Plaintiff has listed as Doe defendants.  I have gathered this knowledge first hand by working as a certified Information Technology Specialist, as a Doe defendant, and by running my Web site (*http://dietrolldie.com*), dedicated to posting news and views concerning copyright infringement lawyers (AKA: Copyright Trolls) and John/Jane Does.  While running my site, I have corresponded with many Doe defendants who like myself, are

---

[1] US News and World report, 2 Feb 12, Jason Koebler, *Porn Companies File Mass Piracy Lawsuits: Are You At Risk?*
http://www.usnews.com/news/articles/2012/02/02/porn-companies-file-mass-piracy-lawsuits-are-you-at-risk.

being abused by Plaintiffs and copyright infringement lawyers who follow this business

model.  Some of the Doe defendants I have interacted with have been pressured to settle with

clients of Mr. Fiore for cases filed in the Eastern District of Pennsylvania.

6.  I hope my declaration will aid the Court in understanding the questionable practices of

Plaintiff, copyright infringement lawyers in general, and correcting the information Mr. Fiore

presented the court during the 14 May 12, hearing.  The anonymous nature of this declaration

does not detract from its logic, truthfulness, and will only aid in the understanding of these

technically complex types of cases.  I thank the court for indulging this John Doe.

7.  <u>BitTorrent</u>

      BitTorrent is a computer program and protocol (system of rules) for sharing large

files across the Internet.  BitTorrent is part of a group of file sharing applications, known as

peer-to-peer (P2P).  BitTorrent is completely legal and only a tool in which the individual

user decides how it is used.  The company was founded in 2004 and their main office is

located in San Francisco, CA.  Details concerning BitTorrent can be found at

<u>www.bittorent.com</u>.  BitTorrent can and is used by personnel engaged in illegal file sharing,

to include Plaintiff's movies.  It is also used to legally distribute various files, to include

software, music, ebooks, and movies.  The BitTorrent Company and the various versions of

its file sharing software are not hidden in some basement in Eastern Europe or Asia as Mr.

Fiore suggests.  This statement makes it seem that Mr. Fiore has very little knowledge on the

software that plays a central part in these copyright infringement cases he is filing.

8.  <u>Wireless Networking</u>

      Mr. Fiore claims all the Doe defendants (public IP addresses) had to take active

steps to install the BitTorrent software on their computers and was not an accidental matter.

Mr. Fiore omits to tell the court the public IP address Plaintiff's agents recorded does not

necessarily correlate to the BitTorrent software being installed on any computer belonging to

Doe defendants.  The public IP address Plaintiff provided the court only correlates to the

immediate location of the Internet service and who pays the Internet Service Provider (ISP).

This is due to the fact that a majority of homes and small businesses today use a Wireless

Firewall/Router (WFR) to share the Internet connection to systems at their location.  The

WFR allows multiple wired and wireless connections from computers (some possibility

unauthorized); all using the same Public IP address Plaintiff has collected (Exhibit A).  As the

wireless signal of the WFR commonly extends outside the residence, it is not unusual for

unauthorized systems to connect to it.  Some ISP subscribers (Doe defendants) may have run

their wireless Internet connection open (no password required), so anyone could have

connected to it and downloaded Plaintiff's movie.  Even if an ISP subscriber secures the

wireless Internet connection with a password, there are various vulnerabilities that could be

exploited to gain access to it.

Possible claims of negligence on the part of Doe defendants in not securing an

Internet connection or by not monitoring what occurs on it are baseless.  There is no legal

duty or contractual obligation between the defendants and Plaintiff to require such action.

On 30 Jan 12, Judge David Ezra, stated the following concerning negligence claims in

copyright infringement case 1:11-cv-00262, Liberty Media Holdings, LLC, v. Hawaii

members of swarm…,

> The Court concludes that the allegations in the FAC are not sufficient to
> state a claim for negligence for a couple reasons. First, nowhere in the FAC does
> Plaintiff assert any specific legal duty in connection with its negligence claim.
> Further, Plaintiff has not cited, nor has the Court found, any case law with
> analogous facts from which the Court could conclude that the Defendants owed
> Plaintiff a general duty to secure their internet connection. Second, even assuming

Plaintiff had alleged a cognizable duty, the FAC fails to allege any facts demonstrating how Plaintiff breached that duty. Plaintiff's Memorandum in Opposition to the instant Motion highlights the purported risks associated with failing to password-protect one's wireless network. However, Plaintiff does not allege in the FAC that any of the individual Defendants failed to password-protect his/her wireless network or otherwise monitor the use of his/her computer by others. The bare assertion that they "failed to adequately secure their Internet access" is conclusory and unsupported by specific factual allegations regarding the individual Defendants. Therefore, it is not entitled to an assumption of truth for purposes of ruling on the instant Motion. (*1:11-cv-00262-DAE-RLP, Document #66, Order: (1) Granting in Part and Denying in Part Defendant Hatcher's Motion to Dismiss, (2) Granting Plaintiff's Leave to Amend, and (3)Vacating the Hearing, Page 13*)

The WFR provides each system connected to it an "internal" IP address that no one outside the home network will ever see (Exhibit A). The unauthorized use of a defendants Internet connection is sometimes unwittingly done by a neighbor, but has also been done by malicious third-parties wishing to avoid detection of illegal activity or to implicate a defendant in a crime. Due to the technical nature of the WFR, most users set-up the device and never touch it again unless there is a problem. Most users will never know their Internet connection was illegally used by third parties unless they receive some notification. One such common notification is the Digital Millennium Copyright Act (DMCA) take-down notice from a copyright content owner. Note: most pornography copyright content owners do not issue DMCA take-down notices to ISPs and their customers (Doe defendants). Due to the very limited network logging ability of most WFR, by the time the ISP notifies the subscriber of a legal action (such as this case), any WFR logs showing possible third-party users are long gone. If DMCA take-down notices were immediately issued to the ISPs and Doe defendants, there is a better chance of the WFR having relevant logs.

Two 2011 Federal court filings from defendants in a similar California copyright infringement case (*3:11-cv-02766-MEJ, Northern District of CA, Patrick Collins v. Does 1-*

*2590, Documents 22 and 52*), show how weak the Public IP address is in identifying the actual copyright infringers.

In document 22 (*3:11-cv-02766-MEJ*), Bobbie Thomas (ISP subscriber), Richmond, CA, tells the court she is a disabled female who lives with her adult daughter and several in-home care providers.  The residence (location of the Public IP address) is a three-story building in which her daughter runs a child day care business for 12-hours a day.  In the first floor common area, Mrs. Thomas' personal computer and Internet connection were open and available for any of the residents or anyone with access to use.

In document 52 (*3:11-cv-02766-MEJ*), Steve Buchanan (ISP subscriber), Phoenix, AZ, tells the court that unknown personnel were abusing his Internet connection and his ISP had to help him re-secure his WFR.  Mr. Buchanan enlisted the help of his ISP after receiving notification from his ISP that copyright protected movies were being shared via his public IP address.  Mr. Buchanan eventually secured his WFR and determined that unknown personnel had also illegally accessed his wife's computer and prevented it from connecting to his network.

The unauthorized use of a home WFR led to one Buffalo, NY, family to being investigated for allegedly downloading child pornography.  On 7 March 2011, US Immigration and Customs (ICE) agents executed a search warrant for child pornography based only on the subscriber information (Public IP address) they received from the ISP.  ICE later determined that a next-door neighbor had used the Internet connection via the WFR. [2]

In July 2011, Barry Ardolf, Minnesota, was convicted of hacking a neighbors (Matt and Bethany Kostolnik) WFR, trying to frame them with child pornography, sexual

---

[2] http://www.huffingtonpost.com/2011/04/24/unsecured-wifi-child-pornography-innocent_n_852996.html,  *Innocent Man Accused of Child Pornography After Neighbor Pirates His WiFi, 24 Apr11.*

harassment, and even sending threading emails to Vice President Joe Biden. [3]  Mr. Ardolf

used freely available software and manuals to hack the Wired Equivalent Privacy (WEP)

protecting the Kostolnik's WFR.  Due to the threatening emails sent to the Vice President, the

US Secret Service contacted Mr. Kostolnik based on the email and Public IP address.  Mr.

Kostolnik was eventually cleared of these allegations after it was determined Mr. Ardolf

hacked their WFR.  Mr. Ardolf was eventually sentenced to 18 years in prison (*case 0:10-cr-*

*00159-DWF-FLN, USDC, District of Minnesota*). [4]

Examples of why the registered IP subscriber did not illegally download/share the

copyright protected movie are:

    a.  Home Wireless Internet access point run open (like at an airport or coffee bar) and abused by an unknown person.
    b.  Guest at the residence abusing the Internet connection without the owner knowing.
    c.  Neighbor connects (knowingly or unknowingly) to the network and the owner doesn't know of this activity.
    d.  IP address is part of a group residence (roommates), apartment building, or small home business where a user (not the ISP subscriber) downloaded/shared copyright protected movie.
    e.  Home system infected by a Trojan Horse malware program and controlled by unknown personnel.
    f.  Unknown person hacks the Wireless security settings of the WFR to abuse the owners Internet connection. [5]

Without additional investigative steps, innocent personnel are bound to be

implicated in infringement activity and pressured to pay a settlement to make the threat of a

federal law suit go away.   One earlier court noted the problem with only using the Public IP

address to identify the alleged infringer:

---

[3] *http://www.networkworld.com/news/2011/071311-wifi-hack.html*, "Depraved" Wi-Fi hacker gets 18 years in prison, *13 Jul 11*.

[4] *http://www.wired.com/images_blogs/threatlevel/2011/07/ardolffedssentencingmemo.pdf*, Government's Position With Respect to Sentencing, 14 Jul 11.

[5] *http://www.kb.cert.org/vuls/id/723755*, WiFi Protected Setup (WPS) PIN brute force vulnerability, Vulnerability Note VU# 723755, 27 Dec 11

Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants. *BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004)* (severing lawsuit involving 203 defendants).

Without informing the court of these facts, it is irresponsible for Mr. Fiore to tell the court that ALL the defendants installed BitTorrent software and knowingly took part in the illegal download/sharing of a copyright protected movie just because Plaintiff recorded their public IP address.

9. Media Access Control (MAC) Address

The MAC address the ISPs have on record for Doe defendants is a type of serial number found on devices with a computer networking capability. Common networking enabled devices include computers, smart phones, video game systems, televisions, and DVD players. Many ISPs use the MAC address as a screening filter to limit access to their network to only the paying customers. Depending on the specific ISP, the MAC address recorded may be for the cable/DSL modem or the first network enabled device connected to the modem. If a Doe defendant only has one computer connected directly to the cable/DSL modem, then the ISP may record the MAC address for this device. As it is common today for personnel to first connect a WFR into the cable/DSL modem, the MAC address recorded by the ISP may be for this device. None of MAC addresses for the internal devices connected to the WFR (wired or wireless) are seen or recorded by the ISP or anyone else outside of the home network (Exhibit A). As previously stated, the logging ability of the WFR is very limited and the fact that Plaintiff waited so long to file this case, relevant logs are likely gone.

10. Determination of the Actual Infringer

        Plaintiff has no intention of identifying the actual copyright infringers with this action. Plaintiff's goal is to obtain ISP subscriber information for the public IP addresses they recorded, issue settlement demands, and eventually dismiss the cases without naming or serving a single defendant. Plaintiff claims the public IP address shows the ISP subscriber is responsible for the infringement activity. As shown above, this logic is flawed and to truly determine the infringer, more investigative effort has to be accomplished. The history of copyright infringement law suits by pornography content owners shows the overwhelming majority of defendants are never named and served with a summons. On 24 Feb 2012, Prenda Law Inc., one of the main copyright infringement law firms in the U.S., stated the following.

> Although our records indicate that we have filed suits against individual copyright infringement defendants, our records indicate no defendants have been served in the below listed cases. (*AF Holdings LLC, v. Does 1-135, case 5:11-cv-03336-LHK (NDCA), Document 43 (Declaration of Charles Piehl), Exhibit A, section 9.*)

        <u>Note</u>: the number of cases in the Prenda document was 118, with over 15,000 Doe defendants since 2010. Out of 15,000+ Doe defendants, none were named and served with a summons (as of 24 Feb 12). I'm confident that if asked to produce a similar document, Mr. Fiore's report would be very similar for the cases he has filed in the EDPA.

11. Order & Report & Recommendation, Case 2:11-cv-03995, Judge Gary Brown (EDNY)

        The basis of the 14 May 12, hearing was to address concerns the court had with Plaintiff's cases, as raised by Judge Brown's 1 May 12, Order & Report & Recommendation (ORR), Case 2:11-cv-03995, Document 39, Eastern District of New York. It is shocking Mr. Fiore didn't know about this ORR, as it deals with his client directly and was seen as a major set-back to the current copyright infringement law suits in EDNY and highly relevant to all law firms pursuing

these cases.

The court's question to Mr. Fiore about placing all of these types of copyright infringement cases under one judge is a valid one. Mr. Fiore doesn't directly state they shouldn't be placed under one judge, but he infers it is likely his view. Mr. Fiore incorrectly tells the court that as these copyright infringement cases are all "different," they should not be consolidated under the same judge. The issue is not that all of the EDPA pornography copyright infringement law suits have different Plaintiffs, different movies, and different Doe defendants. The key issue is they are all the same type of pornography copyright infringement law suit. Here are the main reasons why the EDPA should consolidate them under one judge (or limited number).

- These cases can be highly technical and a good understanding of computers/networking and Internet file sharing is needed. Having to repeatedly educate judges new to this case type on the technical aspects is a waste of limited judicial resources.

- The consolidation will ensure a uniform response for Plaintiffs and Doe defendant motions and case management, independent of which court the case is assigned to.

- All of the complaints for these cases are for Copyright Infringement in accordance with Title 17, Section 101.

- All of the alleged infringed copyright protected content is adult pornography.

- All of the alleged copyright infringement occurred via Internet file sharing applications, primarily BitTorrent.

- All the Plaintiffs in these cases employ some sort of technical monitoring service to record the public IP address of alleged infringers.

- All cases deal with Doe defendants who are only identified by their public IP address.

-   All Plaintiffs seek leave to serve third party subpoenas prior to a Rule 26(f) Conference. The third party is the ISP who has the contact information (name, address, telephone number, email) for the subscriber assigned the public IP address Plaintiff recorded.

-   Many Doe defendants in these cases file motions to quash, dismiss, or sever, based on claims of improper joinder, improper jurisdiction, or lack of prima facie evidence.

-   Once the contact information for the Doe defendants are obtained, Plaintiffs make settlement demands of thousands of dollars to make the fear of a law suit go away.

-   For over 200,000 Doe defendants nation-wide since 2010, there have only been a handful of default judgments issued. Most Plaintiffs dismiss the cases against non-settling Doe defendants. The goal with these types of law suits is not to prevent copyright infringement, but to generate revenue on a repeatable basis.

In his ORR (case 2:11-cv-03995), Judge Brown correctly describer the litigation practices of these cases as "Abusive."

>   Our federal court system provides litigants with some of the finest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. in an earlier case, "while the courts favor settlements, filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." *Patrick Collins, Inc. v. Does 1–3757*, 2011 U.S. Dist. LEXIS 128029, at *6–7 (N.D.Cal. Nov. 4, 2011).

After my personal information was released to my Plaintiff, I was repeatedly threatened with an individual law suit. I was told I was responsible and there was no defense. I was told that unless I settled, the case would drag on for a year or two, and it

would cost me thousands more dollars than settling.  My Plaintiff eventually dismissed the

case after keeping it open for more than a year.  I was never named in any complaint and

never received a summons, even after repeated calls and letters stating they were about to

take such actions.  On 1 December 2011, Judge Maria-Elena James, Northern District of

California (*case # 3:11-cv-02766-MEJ, Patrick Collins v. Does 1-2590*), commented on this

practice.

> Since granting Plaintiff's request, a check of the Court's docket disclosed that no
> defendant has appeared and no proof of service has been filed. Further, the Court is
> aware that this case is but one of the many "mass copyright" cases to hit the dockets
> of federal district courts across the country in recent months. Like in this case, after
> filing the suit, the plaintiff seeks discovery from ISPs who possess subscriber in-
> formation associated with each IP address.  With the subscriber information in
> hand, the court is told, the plaintiff can proceed to name the defendants in the con-
> ventional manner and serve each defendant, so that the case may proceed to disposi-
> tion. This disposition might take the form of settlement, summary judgment, or if
> necessary, trial. In most, if not all, of these cases, if the plaintiff is permitted the re-
> quested discovery, none of the Doe defendants are subsequently named in the cases;
> instead, the plaintiff's counsel sends settlement demand letters and the defendants
> are subsequently dismissed either by the Court or voluntarily by the plaintiff.

12. Conclusion

The copyright infringement of protected works, such as Plaintiff's, is a problem and

the owners have the right to seek redress for it.  Plaintiff's misuse of the court in seeking re-

dress stems from the weak prima fascia evidence collected (public IP address) coupled with

abusive settlement practices.  Plaintiffs commonly set the settlement fee for defendants at the

point where it costs them more to fight than settle, regardless of guilt or innocence.  The

threat of possible financial ruin, family and friend embarrassment, a convenient settlement

option, and non-disclosure agreement, make it easy for even innocent people to possibly ac-

cept paying the settlement fee.  Plaintiff knows their evidence collections methods are not

100% effective at identifying the actual infringers.  To admit this short coming risks the prof-

itability of this business model and future operations.  The fact that a majority of Federal civ-

il cases are settled before trial should not be the justification basis for allowing this activity to

continue.  Plaintiff and the growing number of copyright infringement lawyers are abusing

the court for their financial gain.  These cases and other like it in the EDPA (past, present,

and future) will follow the standard course of action: (1) release of ISP subscriber infor-

mation, (2) settlement demands made by Plaintiff, and (3) dismissal of the cases after settle-

ments are collected from some defendants (Noting that no defendants will be named and

served).


   I thank the court for hearing this declaration.


Dated: 5/31/2012        Respectfully submitted,


                  John Doe

                  John Doe, AKA: DieTrollDie
                  Web site: *http://dietrolldie.com*
                  *Doerayme2011@hotmail.com*

# EXHIBIT A (2:12-CV-02084)

### Example of home network using a Wireless Firewall/Router



The following table is an example of a Dynamic Host Configuration Protocol (DHCP) host table maintained inside the Wireless Firewall Router. It shows the names, Internal IP address, MAC addresses, and IP address lease expiration time for systems that are connected to the network. Note: this example does not directly correspond to the network diagram above.

## DHCP Active IP Table

DHCP Server IP Address:  **192.168.1.1**                                    Refresh

| Client Host Name | IP Address | MAC Address | Expires | Delete |
|---|---|---|---|---|
| SipureSPA | 192.168.1.84 | 00:0E:08:CD:C9:96 | 20:01:49 | ☐ |
| stephani-16adee | 192.168.1.85 | 00:0C:76:88:C4:0A | 08:49:53 | ☐ |
| admin-krorl9y18 | 192.168.1.86 | 00:08:02:FE:B8:22 | 23:43:47 | ☐ |
| lucas-be6n1jf9k | 192.168.1.89 | 00:20:ED:33:70:F4 | 13:12:54 | ☐ |

COPY ON FILE

ATTACHMENT / EXHIBIT

CERTIFICATE OF SERVICE

I hereby certify that on 5/31/2012, I served a copy of the foregoing document, via US Mail, on:

Fiore & Barber LLC
Attn. Christopher Fiore
425 Main Street, Ste 200
Harleysville, PA 19438

Dated: 5/31/2012                         Respectfully submitted,

*John Doe*

John Doe, AKA: DieTrollDie
Web site: *http://dietrolldie.com*
*Doerayme2011@hotmail.com*

**%JS 44** (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| FIRST TIME VIDEOS LLC, | JOHN DOE 68.231.208.27 |

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Joseph Perea, P.A.; 9100 S Dadeland Blvd, Suite 1500, Miami, Florida 33156

Attorneys (If Known)

(d) Check County Where Action Arose: ✓ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE   ☐ HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

✓ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ✓ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☒ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

✓ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Re-filed- (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO     b) Related Cases ☐ YES ☐ NO

JUDGE Honorable Joan A. Lenard     DOCKET NUMBER 12-civ-21952-JAL

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

MOTION TO DISMISS COMPLAINT

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD   John Doe 68.231.208.27

DATE   08/03/2012

**FOR OFFICE USE ONLY**

AMOUNT _____   RECEIPT # _____   IFP _____

JS 44 Reverse (Rev. 02/08)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

(d) Choose one County where Action Arose.

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States District Courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless diversity. Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**                Example:        U.S. Civil Statute: 47 USC 553
                                                                                         Brief Description: <u>Unauthorized reception of cable service</u>

**VIII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature.** Date and sign the civil cover sheet.



FROM:

John Doe 68.231.208.27
123 Main st
Beverly Hills CA 90210

TO:

United States District Court
Southern District of Florida
400 North Miami Ave.
8th Floor
MIAMI FL.
33128

FIRST FLAT

Printed by MEGA packaging

WAR-407R

